[No. 14464-0-III.   Division Three.   February 20, 1996.]

THE STATE OF WASHINGTON, *Petitioner*, v. ERNEST
ALFORD GARRETT, *Respondent*.

*James R. Sweetser, Prosecuting Attorney,* and *Stefanie Walter, Deputy,* for petitioner.

*E. Striker Scott* of *Spokane Public Defender's Office,* for respondent.

SWEENEY, C.J. — WAC 448-14-020(3)(b) requires that "[b]lood samples for alcohol analysis shall be preserved with an anticoagulant . . . ." Ernest A. Garrett was arrested for driving while under the influence. RCW 46.61.502. It is undisputed that an anticoagulant was not added to his blood sample. Instead, the state toxicologist homogenized the sample with a tissue grinder to restore the blood to an unclotted state. According to the toxicologist, the lack of an anticoagulant did not change the results of the blood test because the homogenization process is scientifically reliable. We are asked here to decide whether the requirement of WAC 448-14-020(3)(b) is mandatory or whether the State need only establish a prima facie case that the blood sample was free from adulteration. We conclude the word "shall" as used in WAC 448-14-020(3)(b) is mandatory and that the trial court properly vacated Mr. Garrett's conviction.[1]

## DISCUSSION

To be valid, analysis of a person's blood "*shall* have

---

[1]The superior court concluded:

"1. WAC 448-14-020(3)(b) requires that 'Blood samples for alcohol analysis shall be preserved with anti-coagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration.'

"2. The State Toxicologist was not acting arbitrarily or capriciously when enacting WAC 448-14-020(2)(a).

"3. The requirements of WAC 448-14-020(2)(a) must be strictly construed and required."

been performed according to methods approved by the state toxicologist . . . ." RCW 46.61.506(3) (emphasis added). WAC 448-14-020(3)(b) requires: "Blood samples for alcohol analysis *shall* be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration." (Emphasis added.) Other provisions of the regulation, however, employ the term "should." WAC 448-14-020(1)(b) says that samples "should" be retained for at least three months. According to subsection (2)(a), results "should" be expressed as grams of alcohol per 100 milliliters. Subsection (2)(b) provides that analysis results "should" be reported to two significant figures. But WAC 448-14-020(3)(b), adopted to reflect the legislative intent of RCW 46.61.506, expressly requires that blood samples "shall" be preserved with an anticoagulant.

■ A provision containing both "should" and "shall" presumes lawmakers intended to distinguish between the terms. *Clark v. Pacificorp*, 118 Wn.2d 167, 176-77, 822 P.2d 162 (1991). "Should" is permissible and expresses a desire or request. *Tennant v. Roys*, 44 Wn. App. 305, 313, 722 P.2d 848 (1986). " '[S]hall' clearly is unambiguous and presumptively creates an imperative obligation . . . ." *Clark v. Horse Racing Comm'n*, 106 Wn.2d 84, 91, 720 P.2d 831 (1986); *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 446, 842 P.2d 956 (1993).

■ The language of WAC 448-14-020(3)(b) is mandatory. Therefore, because the vial used to collect Mr. Garrett's blood sample did not contain an anticoagulant, the trial court properly vacated the conviction.

The State concedes that it did not comply with the statute or the regulation. It argues the trial court should not have dismissed the prosecution because it presented a prima facie case the sample was free from adulteration. The State relies on *State v. Barefield*, 47 Wn. App. 444, 735 P.2d 1339 (1987), *aff'd*, 110 Wn.2d 728, 756 P.2d 731 (1988), and *State v. Clark*, 62 Wn. App. 263, 814 P.2d 222 (1991).

In *Barefield*, the state toxicologist testified that the vial manufacturer "always puts anticoagulants in this type of vial . . . ." *Barefield*, 47 Wn. App. at 458. Further, "literature put out by the company and the label on the vial indicated there was anticoagulant" in the test vial. *Barefield*, 47 Wn. App. at 458. Division One ruled the test results were admissible. Similarly, in *Clark*, the vacutainer vials were found to contain a sufficient amount of anticoagulant. *Clark*, 62 Wn. App. at 271.

*Barefield* and *Clark* are factually inapposite. In both instances, the State complied with WAC 448-14-020(3)(b). Here, it did not. The State must comply with the mandatory language of WAC 448-14-020(3)(b) notwithstanding its ability to establish a prima facie case that the sample was unadulterated.

Other decisions support our holding. In *State v. Steinbrunn*, 54 Wn. App. 506, 774 P.2d 55, *review denied*, 113 Wn.2d 1015 (1989), the defendant argued the State failed to establish a prima facie case that the blood samples were preserved in accordance with the procedures established by the state toxicologist. The court admitted the results of the blood test. But in *Steinbrunn*, the state toxicologist testified that the vials contained an anticoagulant. *Steinbrunn*, 54 Wn. App. at 508. *See also State v. Erdman*, 64 Wn.2d 286, 288, 391 P.2d 518 (1964) (testimony established that general practice was to place sodium fluoride (anticoagulant) in all bottles prepared for blood samples).

■ We are mindful of the State's concern that strict compliance with the administrative regulation may, on occasion, exclude accurate and relevant blood evidence. But we may not attribute to the words used in RCW 46.61.506 and WAC 448-14-020(3)(b) a meaning different than that which was obviously intended. *Jenkins v. Bellingham Mun. Court*, 95 Wn.2d 574, 580, 627 P.2d 1316 (1981).

The order vacating Mr. Garrett's conviction is affirmed.

THOMPSON and SCHULTHEIS, JJ., concur.