# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| SUKHJIT SINGH, | ) | No. 75750-4-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF LICENSING, | ) ) ) | |
| Appellant. | ) ) | FILED: April 9, 2018 |

TRICKEY, A.C.J. — Sukhjit Singh appealed the Washington State Department of Licensing's (Department) suspension of his driver's license following arrest for driving under the influence of alcohol. The King County Superior Court overturned the suspension because of insufficient evidence of compliance with the statutory requirements for blood sample collection and testing. A commissioner of this court granted discretionary review as an issue of public interest. We agree that the Department's evidence failed to prove compliance with the statutory requirements and affirm the superior court's decision.

## FACTS

In November 2015, Singh hit another vehicle while driving his car. The responding police officer attempted to administer a preliminary alcohol breath test. Singh did not speak English and the implied consent warnings for breath testing were not immediately available in his primary language. When Singh struggled to comply with the responding police officer's directions for the preliminary breath

test, the officer decided to forego the breath testing and obtained a search warrant for a blood sample to test for alcohol or drugs.

Singh was taken to Valley Medical Center, where a phlebotomy technician drew a sample of his blood and sent the sample to the Washington State Toxicology Laboratory. Forensic scientist Elizabeth Wehner tested Singh's blood sample for the presence of alcohol. She prepared a report that included her signed certification that the testing procedures complied with the methods approved by the state toxicologist.

Wehner's certification stipulated that she performed all the testing, and "technically reviewed all relevant pages of testing documentation in the case record. The tests were administered according to methods approved by the state toxicologist pursuant to [Washington Administrative Code (WAC)] 448-14-010, -020, -030 and/or RCW 46.61.506(3)."[1] Wehner's report also identified the lot numbers of the test tubes used to collect and store Singh's blood.

The test showed that Singh's blood alcohol content was 0.20 grams per 100 milliliters, which exceeds the legal limit for driving in Washington.[2]

After receiving Singh's arrest report and test results, the Department notified Singh that it intended to suspend his license for 90 days. Singh requested an administrative hearing before a Department hearing examiner to contest the suspension.

At Singh's license revocation hearing, the Department offered as evidence

---

[1] Certified Appeal Board Record at 3.
[2] The legal limit is 0.08 grams per 100 milliliters. RCW 46.20.308(5).

two separate documents: Wehner's certification of the testing process and a "CERTIFICATE OF COMPLIANCE."[3] The company that manufactured the tubes created the certificate of compliance. It described the technical specifications for the lot number of the tubes used to collect Singh's blood for testing. The certificate of compliance specified that the tubes were manufactured for blood alcohol determination and certified that the tubes were compliant with the requirements for sterility and additives.

Singh argued that the certificate of compliance should be excluded because the document was notarized rather than signed under penalty of perjury. The hearing examiner admitted Wehner's certification of the testing process but excluded the certificate of compliance. The Department did not submit other evidence pertaining to Singh's blood sample and testing.

Even without the certificate of compliance, the hearing examiner determined that there was prima facie evidence that the analysis of Singh's blood sample complied with the statutory requirements for blood draws and testing. The hearing examiner sustained the Department's suspension of Singh's driver's license.

Singh appealed the hearing examiner's decision to King County Superior Court. The superior court ruled that the hearing examiner's conclusion that the blood testing met all statutory requirements was not supported by substantial evidence. The superior court determined that Wehner's conclusory declaration failed to prove compliance with all statutory requirements for blood sample

---

[3] Clerk's Papers at 42.

collection and testing. The superior court stated, "I truly think that she talks about tests, and I just think [that] I would be intellectually dishonest to say the testing includes a finding that the enzyme sample was appropriate and the anticoagulant was present with the—which really relates to the sample itself."[4] The superior court concluded that the hearing examiner's reliance on this evidence to prove compliance was an error of law and reversed the Department's suspension of Singh's license.

The Department petitioned this court for discretionary review as an issue of public interest and because the superior court's decision conflicted with precedent that reviewing courts should not reweigh evidence. A commissioner of this court determined that the Department failed to demonstrate that the superior court's decision was inconsistent with Washington precedent. But the commissioner granted review because the issue involved sufficient public interest.[5]

## ANALYSIS

The Department argues that the forensic scientist's sworn statement certifying compliance with the approved methods for blood alcohol testing establishes a prima facie case of compliance with the statutory requirements for preservation of blood alcohol test evidence. We disagree, as evidence of

---

[4] Report of Proceedings (Aug. 5, 2016) at 27.
[5] Singh contends that the Department may not argue that the superior court improperly reweighed evidence because the commissioner rejected this argument and did not grant discretionary review on this issue. Singh's interpretation of the scope of discretionary review is unsupported. Under RAP 2.3(e), an appellate court may specify the issues and limit the scope of discretionary review. See City of Bothell v. Barnhart, 156 Wn. App. 531, 538 n.2, 234 P.3d 264 (2010); Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 959 n.7, 247 P.3d 18 (2011). But Singh has not cited any case that establishes an appellate court's discretion to limit the arguments that the parties may raise on review. See RAP 10.3(a)(6). Therefore, we will consider the Department's arguments on appeal.

compliance with the WAC's analytical testing procedures is not evidence of compliance with the mandatory sample preservation requirements.

The implied consent statute provides an informal and streamlined administrative process for hearings in order to avoid lengthy litigation of license suspension and revocation proceedings. Ingram v. Dep't of Licensing, 162 Wn.2d 514, 525, 173 P.3d 259 (2007); RCW 46.20.308. This streamlined procedure allows for the admission of relevant evidence without adherence to the highly technical foundation and hearsay rules. Ingram, 162 Wn.2d at 525. Washington's implied consent statute also governs judicial review of license suspension proceedings. RCW 46.20.308.

Under the implied consent statute, evidence is subject to the requirements of RCW 46.61.506. Cannon v. Dep't of Licensing, 147 Wn.2d 41, 52, 50 P.3d 627 (2002). The statute stipulates that blood alcohol tests must be "performed according to methods approved by the state toxicologist." RCW 46.61.506(3). The state toxicologist's established techniques for blood alcohol analysis are delineated in the WAC. Ch. 448-14 WAC.

One element of blood alcohol testing is sample collection and preservation, which requires:

> (a) A chemically clean dry container consistent with the size of the sample with an inert leak-proof stopper will be used.
> (b) Blood samples for alcohol analysis must be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration. Suitable preservatives and anticoagulants include the combination of sodium fluoride and potassium oxalate.

WAC 448-14-020(3)(a), (b). These requirements ensure that the blood sample is properly preserved for testing. State v. Clark, 62 Wn. App. 263, 270, 814 P.2d 222 (1991). The Department has the initial burden of establishing a prima facie case that blood preservation and testing were correctly performed and, therefore, free of adulteration that could produce error. State v. Brown, 145 Wn. App. 62, 69-70, 184 P.2d 1284 (2008). Satisfaction of WAC 448-14-020(3)(b) is mandatory, notwithstanding the Department establishing a prima facie case that the sample was unadulterated. State v. Garrett, 80 Wn. App. 651, 653, 910 P.2d 552 (1996); Brown, 145 Wn. App. at 71-72.

The Department's evidence must demonstrate use of anticoagulants and enzyme poison through certification or testimony. Brown, 145 Wn. App. at 71-72; Clark, 62 Wn. App. at 271. Washington courts have consistently required clear evidence of proper blood sample preservation in addition to compliance with the analytical testing procedures, and have overturned criminal convictions when the evidence failed to show compliance with WAC 448-14-020(3). See, e.g., State v. Hultenschmidt, 125 Wn. App. 259, 266, 102 P.3d 192 (2004) (blood analysis was not valid without evidence that enzyme poison was in the sample tube despite prima facie evidence that the sample was free from adulteration); State v. Bosio, 107 Wn. App. 462, 468, 27 P.3d 636 (2001) (police officer and nurse testified about the presence of anticoagulant in the bottom of the sample vial but no evidence established use of enzyme poison); Garrett, 80 Wn. App. at 653 (blood analysis

was not valid where sample vial did not contain anticoagulant despite evidence that the sample was free from adulteration).[6]

We review the Department's administrative decision from the same position as the superior court and in the same manner as an appeal from a decision of a court of limited jurisdiction. Clement v. Dep't of Licensing, 109 Wn. App. 371, 374, 35 P.3d 1171 (2001). Review is limited to a determination of whether the Department committed any errors of law, whether substantial evidence supports the superior court's findings, and whether those findings support the conclusions of law. RCW 46.20.308(8); Dep't of Licensing v. Sheeks, 47 Wn. App. 65, 68-69, 734 P.2d 24 (1987).

Substantial evidence is sufficient to persuade a fair-minded person of the truth of the stated premise. Sheeks, 47 Wn. App. at 69. We must accept factual determinations made by the Department or reasonably inferred from the Department's final order that are supported by substantial evidence. RCW 46.20.308(9); RALJ 9.1(a); Clement, 109 Wn. App. at 374 n.6. A reviewing court must be "careful to do no more than search for the presence of evidence and not to weigh it or evaluate credibility." Sheeks, 47 Wn. App. at 69.

At Singh's license revocation hearing, the Department offered the certificate of compliance and Wehner's report to establish a prima facie case of compliance

---

[6] The Department claims that these criminal cases are inapplicable to administrative license revocation proceedings with lower evidentiary admission standards and standards of proof. While civil license proceedings have a lower burden of proof, the factual findings must be supported by substantial evidence and the law must be applied correctly to the facts. Ingram, 162 Wn.2d at 517-22. The lower standards of admissibility in the license revocation proceeding does not relieve the Department of the burden to provide sufficient evidence of compliance with statutory requirements.

with WAC 448-14-020. The hearing examiner did not admit the certificate of compliance describing the blood sample collection tubes. The Department offered no other evidence to establish that the collection tubes were chemically clean and contained enzyme poison and anticoagulants as required by WAC 448-14-020(3)(a), (b). Without evidence that the collection tubes met the WAC requirements, the Department did not establish a prima facie case that preservation of Singh's blood complied with the statutory requirements.

According to the Department, Wehner's statement that she administered the tests in accordance with WAC 448-14-010, -020, -030 and RCW 46.61.506(3) implies that she ensured that Singh's blood sample was properly preserved in compliance with the requirements of WAC 448-14-020(3). But Wehner's report refers only to the blood tests that she administered. She cannot certify the performance of tasks that she did not perform herself. While her report lists the numbers of the tubes used to collect Singh's blood, Wehner did not provide information about the contents of those tubes. Therefore, Wehner's report lacks the crucial information about the presence of anticoagulants and enzyme poison required to prove compliance with WAC 448-14-020(3).

The Department argues that Wehner's certification was properly admitted and proved compliance under the lower evidentiary standards of the implied consent statute. While the implied consent statute has a lower threshold for admitting evidence, the Department still has the burden of proving a valid blood test based on compliance with the WAC requirements. See Cannon, 147 Wn.2d at 59; RCW 46.61.506(3).

8

Wehner's report was the only evidence offered by the Department to show that the preservation and testing of Singh's blood samples complied with all WAC requirements. But her certification only establishes a prima facie case for her compliance in administering the analytical tests of Singh's blood, not the specifics of sample preservation. Thus, even drawing all inferences in favor of the Department, Wehner's report does not establish compliance with WAC 448-14-020(3).

The hearing examiner's conclusion that the Department produced prima facie evidence of compliance with the WAC was an error of law. Therefore, we conclude that the superior court correctly reversed the Department's suspension of Singh's license.

Affirmed.

Trickey, A.C.J.

WE CONCUR:

Mann, J.

Becker, J.