*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHERRY PHILLIPS,

        Plaintiff-Appellant,

v

GRAND RAPIDS HOUSING COMMISSION,

        Defendant-Appellee.

UNPUBLISHED
December 21, 2023

No. 363684
Kent Circuit Court
LC No. 21-011165-NO

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Plaintiff, Sherry Phillips, appeals as of right the opinion and order of the trial court granting summary disposition to defendant, the Grand Rapids Housing Commission (GRHC), and alternatively dismissing her claims for failing to comply with a discovery order. We affirm.

## I. BACKGROUND

This case originates from the deactivation of Phillips's apartment key fob. After Phillips became sick, she shared her key fob with her grandson, so he could access her apartment to take care of her. This violated her apartment building's rules and her lease agreement. The facts leading to litigation are largely undisputed.

In mid-September 2018, Phillips moved into the Ransom House Apartments in Grand Rapids, Michigan. In mid-October 2018, she signed a new lease with GRHC (after an apparent error in the "footer" of the previous lease) to live in the Ransom House Apartments, and she appears to have continued to live there on a month-to-month basis after the new lease expired in late October 2019. Phillips still lived in the Ransom Tower Apartment as of January 31, 2022.

Relevant here, when Phillips signed the October 2018 lease, she agreed "to obey the House Rules," which were attached to the lease and "incorporated [t]herein." The House Rules, in turn, contained a provision related to a tenant's use of their keys stating:

**LOCKS/KEYS**

-1-

No tenant shall alter any lock or install a new lock or doorknocker on *any* door without the written consent of management. Replacement/additional keys must be approved by the Management office and need to be made by our maintenance staff at an additional cost. *Key are for resident use only and should not be given to guests or others to use to gain entry to any Housing Commission buildings, apartment, or dwelling units*.[1]

The rules also provided the hours of operation for the apartment building and contact information, including the main office number, the number of the "Resident Assistant[]" for emergency after-hours repairs, and a general number for after-hours emergencies.

In December 2019, Phillips, 68 years old at the time, contracted pneumonia and was unable to leave her apartment. She asked her grandson to help her with errands, shopping, cleaning, and other tasks, so he regularly visited her apartment, sometimes staying the night. Phillips allowed her grandson to use her key fob to enter the apartment building. Phillips could not use her cell phone to let her grandson into the building because it was "off and not working."

Phillips recovered from the pneumonia a few weeks later. On December 23, 2019, however, Phillips discovered that her key fob no longer worked. According to Phillips, she was "locked out" of her apartment from December 23, 2019, through January 8, 2020, as a result. It is uncontested that only her key fob was deactivated. As described below, the lock to her unit's door remained unchanged and she was still able to access the apartment building through a phone app and contacting building personnel. Phillips claimed she was "forced to stay with friends and relatives" and had to pay for food and lodging because she was "locked-out of [her] apartment." On January 6, 2020, Phillips learned that Talima Billups, the apartment building manager, deactivated Phillips's key fob. Phillips stated that she "did not receive any notice of any kind" that her fob was deactivated, nor an explanation for the deactivation.

On January 8, 2020, Phillips met with Billups to discuss the access issue. According to Phillips, Billups produced two written notices, that Phillips claims she never received, indicating that Phillips's key fob would be deactivated because her grandson was using it. Billups assumed that Phillips was using her cell phone to access the building, according to Phillips's affidavit, but Phillips claimed that her phone was "off during this time and was not working." Phillips explained to Billups that she had "no choice but to let her grandson" use the key fob because she was sick and could not "let him into the building using [her] cell phone because it was off and not working." Billups reactivated the key fob on January 8, 2020. Phillips felt that she "should be compensated for the time [she] was denied access to [her] apartment."

In early December 2021, Phillips sued the Ransom Avenue Development Corporation, also known as Ransom Tower Apartments, and GRHC (collectively, defendants), alleging six claims against them: (1) breach of implied warranty against latent defects; (2) breach of implied warranty of quiet use and enjoyment; (3) breach of contract; (4) a combined claim of fraud in the inducement and violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq*.; (5) breach by

---

[1] Another provision of the House Rules, "Use of Apartment," also states: "Guest should not be allowed to use your keys or your address to receive mail."

constructive eviction; and (6) violation of MCL 600.2918 (unlawful interference with possessory interest). Each claim essentially alleged that defendants disabled her key fob, locking her out of her apartment unit without warning or eviction proceedings, and that, despite notifying them of the problem repeatedly, defendants failed to rectify the issue.

Defendants answered Phillips's complaint in late January 2022, largely denying her allegations. In mid-March 2022 the trial court entered a scheduling order. Relevant here, the court scheduled discovery to close on September 12, 2022.

In early May 2022, GRHC sent interrogatories and its request for production of documents to Phillips. Its discovery requests focused on Phillips's allegations in her complaint and sought information related to her alleged damages. In mid-July 2022, the trial court entered an uncontested order compelling discovery. The order indicated that Phillips had not yet responded to the interrogatories and request for production of documents sent by GRHC in early May 2022. The trial court therefore ordered Phillips to "provide full and complete answers to the pending Interrogatories and provide all of the requested documents within 14 days of the entry of this Order." Fourteen days from July 18, 2022, was August 1, 2022.

Phillips did not provide any discovery responses until August 10, 2022, nine days after the court-imposed deadline in the order compelling discovery responses. GRHC had requested documents relating to the following: documents prepared by, sent, received, maintained, or possessed by Phillips or anyone acting on her behalf relating to the events referenced in her complaint; any documents relating to examinations or treatment by a health care professional regarding potential physical, emotional, or mental-distress type damages; and all documents regarding out-of-pocket expenses, including relocations expenses as referenced in her complaint. Phillips responded to these requests for documents by indicating that she was "gathering these documents and [would] supplement [her] response upon receipt of same." She also refused to produce information about her online activity "without a showing that such items are relevant pursuant to a court order" and would not "release any information with respect to phone records without a court order." GRHC's interrogatories asked, in relevant part, for Phillips to identify any healthcare professionals that had examined or treated her since December 1, 2019. Phillips responded that she was "currently in the process of gathering this information." In other words, Phillips's August 10 response omitted critical discovery that GRHC requested.

In early August 2022, GRHC noticed a deposition for Phillips to take place on August 30, 2022. Phillips and her counsel failed to appear for the deposition and did not contact GRHC's counsel regarding their nonappearance.

In mid-September 2022, GRHC filed two motions: one for summary disposition under MCR 2.116(C)(7)[2] and (10) and another for dismissal as a discovery sanction. In its dispositive motion, GRHC argued Phillips failed to establish that GRHC breached the lease. By deactivating Phillips's key fob, it asserted, it was simply enforcing the House Rule and protecting the other

---

[2] GRHC relied on MCR 2.116(C)(7) for its argument that governmental immunity barred Phillips's tort claims. Phillips conceded this issue below and does so now on appeal, so we do not address it further.

tenants. GRHC also argued that Phillips breached the lease by sharing her key fob and that even if it breached the lease, Phillips's breach preceded any breach by GRHC and thus precluded her from maintaining a breach-of-contract claim against GRHC. GRHC also argued that the lease (an express contract) barred the implied-contract claims because there could not be an express and implied contract covering the same subject.

GRHC also moved for dismissal of the complaint under MCR 2.313(B) for Phillips's violation of the July 2022 discovery order and her failure to appear for her August 30, 2022 deposition. GRHC argued that Phillip's failure to comply with the discovery order by providing incomplete answers, declining to provide medical authorizations, and "flat out refus[ing] to comply" with the court's July 2022 order, "compromised [its] ability to defend" against Phillips's claims. It further argued that her failure to comply with the discovery order was part of a "pattern of failing to comply with discovery" generally, noting her and her attorney's failure to attend the August 30, 2022 deposition. As of the date of the motion to dismiss, Phillips had not explained why she failed to attend the deposition or provide adequate discovery responses as ordered.

Phillips responded to GRHC's motion to dismiss in early October 2022, denying that she refused to provide documents and indicating she would supplement her responses. She admitted that she and her attorney did not attend her deposition, but offered various explanations including: cell phone connection issues, her attorney's office losing power, and possible issues with the Zoom link. Contemporaneous with her response, Phillips moved to extend the scheduling-order dates and adjourn GRHC's dispositive motion. In her motion, she asserted she sent her discovery responses to the law firm that previously represented GRHC (Rhoades McKee) instead of the new firm (McGraw Morris). According to Phillips, her attorney was apparently "unaware of the fact that a substitution was filed substituting in McGraw Morris."

In mid-October 2022, Phillips responded to GRHC's motion for summary disposition. She argued that GRHC's deactivation of her key fob breached the lease's implied covenant of quiet enjoyment by depriving her of the use of her apartment by "deliberately locking her out." Phillips also argued that she did not breach the lease because the rules did not actually prohibit sharing the key fob. She argued that the rules providing keys "*should* not be given to guests," as opposed to "*shall* not be given to guests," indicated it was permissive not mandatory.

After a hearing, the trial court issued its opinion and order granting summary disposition to GRHC and alternatively dismissing Phillips's claims for her failure to comply with discovery. Regarding the breach-of-contract claim, the court found that Phillips had failed to establish that GRHC breached the lease by deactivating her key fob and failing to notify her of the deactivation. It also found that GRHC deactivated the fob because of Phillips's "misuse" of it, and that she had "alternate methods to access her apartment beyond the key fob." The trial court also found that there was no latent defect, noting that GRHC deactivated the fob because Phillips violated the building's rules when she allowed her grandson to use it. It noted again that she had "alternative ways to access her apartment." The court also found that neither Phillips's claim for breach of the implied covenant of quiet enjoyment nor constructive eviction could be maintained because although GRHC deactivated her key fob, she "still had alternate means of accessing her apartment," including through her cell phone and contacting the on-site resident agent.

The trial court also granted GRHC's motion to dismiss as an alternative to granting summary disposition. Referencing MCR 2.313(B)(2)(c) and the factors outlined in *Dean v Tucker*, 182 Mich App 27; 451 NW2d 571 (1990),[3] relevant to discovery sanctions, the court found that the "facts and circumstances of this case warrant[ed] dismissal." It found that Phillips willfully violated the July 2022 discovery order, noting that her responses were "over a week past the deadline" in the order (August 1, 2022), "incomplete," and even included refusals to respond to some of the requests. The trial court also found that Phillips had a history of failing to abide by discovery. It noted that she failed to respond to GRHC's initial discovery requests, only complied—though late and incomplete—after an order to compel, and failed to appear for her deposition. Related to the deposition, the court noted that Phillips failed to contact GRHC about the alleged technological issues and did not reschedule the deposition. The trial court also found that Phillips's failure to timely respond to discovery prejudiced GRHC, noting that the five-month delay in providing largely-incomplete discovery deprived GRHC of time to research Phillips's claims and "find experts to counter her claims." It noted that although case evaluation and a settlement conference had not yet been scheduled, they could not proceed if GRHC was "not meaningfully informed" of Phillips's evidence.

Phillips also had a history of deliberate delay, the trial court found, as demonstrated by her "consistent resistance to the rules and orders of this Court regarding discovery," and that she had a "near-indifference" to complying with its orders, "favor[ing] greater sanction as well." The court also found that Phillips never attempted to supplement her discovery responses despite GRHC's requests and the court's orders. And finally, the trial court found that "a lesser sanction would [not] better serve the interests of justice." It indicated that although it could bar Phillips from supporting her claims because of her discovery violations, that would have the same effect as dismissal because her "inability to support her claims at trial would merely require GRHC to rest its proofs to prevail." The court therefore found that "the interests of justice would be best served by dismissal as the more judicially economic option." This appeal followed.

## II. SUMMARY DISPOSITION OF CONTRACT CLAIMS

Phillips argues that the trial court erred by granting summary disposition of her breach-of-contract and implied-contract claims because genuine issues of material fact remained regarding whether GRHC breached the lease. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine

---

[3] This Court issued the opinion in *Dean* on January 17, 1990, and released it for publication on March 7, 1990. Although *Dean* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 5 n 1.

-5-

issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). We review de novo questions regarding the interpretation of a lease agreement, in accordance with principles of contract interpretation. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties; to this rule all others are subordinate." *Joseph & Anita Russell Trust v Russell*, 338 Mich App 170, 179; 979 NW2d 672 (2021) (quotation marks and citation omitted). To do so, courts must "examine the language of the contract according to its plain and ordinary meaning." *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 508 Mich 461, 477; 975 NW2d 826 (2021) (quotation marks and citation omitted). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Id*. (quotation marks and citation omitted).

The trial court did not err when it granted summary disposition of Phillips's contract claims because she failed to establish a factual dispute regarding whether GRHC breached the lease agreement. Phillips contends that GRHC breached the lease agreement when it deactivated her key fob and locked her out of her apartment, effectively depriving her of the quiet enjoyment of her apartment, constructively evicting her, and forcing her to seek shelter elsewhere before Billups reactivated the fob weeks later. But the temporary deactivation of her key fob did not lock her out of her actual apartment. Instead, the deactivation temporarily deprived her of one way, among several ways, to enter the apartment building, during the time when building management observed someone other than Phillips using the key fob. She still had other means to access the building: her cell phone app and contacting the resident agent. Her lease agreement also demonstrates that she had an actual key to her apartment unit.

Phillips contends that her cell phone did not work, and that there was no evidence that the app was available to her or that it would have worked while her key fob was deactivated. First, as the trial court pointed out, it was "not GRHC's responsibility to ensure that Phillips had a working cell phone." Second, Phillips stated in her affidavit that she could not "let [her grandson] into the building using [her] cell phone because it was off and not working" and she had "no choice but to let [her] grandson use the key FOB." This suggests that she was at least aware that the cell phone app could be used to gain entry to the apartment building.

Phillips also contends that she "did not know who [the resident agent] was or that [an] on site resident agent even existed; thus, she certainly did not have any way to contact this person." Phillips's signature on her lease agreement belies this contention. The lease incorporated the building's rules and included in those rules were various phone numbers tenants could use to contact individuals associated with the building, including a general office number, the number of the "Resident Assistant[]" (for emergency after-hour repairs), and a general number for after-hours emergencies.

Phillips also argues that the trial court erred when it found that Phillips breached the lease when she let her grandson use her key fob, noting that the key-sharing rule provided that keys "should not be given to guests or others to gain entry" to the buildings. The rule's use of the permissive "should" as opposed to the mandatory "shall," Phillips argues, meant that she was allowed to share her key and therefore did not breach her lease. We disagree.

-6-

There is limited caselaw regarding the distinction between "should" and "shall." Most caselaw relates to the distinction between "may" as permissive and "shall" as mandatory. See, e.g., *Committee to Ban Fracking in Mich v Bd of State Canvassers*, 335 Mich App 384, 396; 966 NW2d 742 (2021); *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362094); slip op at 6-9. This Court's decision in *People v Fosnaugh*, 248 Mich App 444, 455; 639 NW2d 587 (2001), however, provides perhaps the most supportive reasoning for Phillips's position. There, the defendant was charged with operating a vehicle while under the influence of alcohol and given two breath tests, one that showed his blood alcohol content was above the legal limit and another that returned an "invalid sample" reading. *Id*. at 447. Relevant here, the issue in *Fosnaugh* was whether an operation manual for administering breath tests required the administering officer to perform a third breath test after the second test returned the "invalid sample" reading. *Id*. at 447-448. The operation manual included language related to the procedure following an "invalid sample" reading, stating that the "operator *should* start a new 15 minute observation period and go through the test procedure again. A blood test *shall* be requested if 'INVALID SAMPLE' is detected again." *Id*. at 454 (quotation marks and citation omitted; emphasis in original).

The *Fosnaugh* Court noted that "should" was not defined in the operation manual or an applicable administrative code rule, and that the term had "not been judicially interpreted by our courts." *Fosnaugh*, 248 Mich App at 454. The Court held that "[w]hile the word 'should' can, in certain contexts, connote an obligatory effect," the manual's drafters "use[d] both the words 'should' and 'shall.' " *Id*. at 455. The Court was thus "not persuaded that [should] ha[d] an obligatory effect" in *Fosnaugh*. *Id*. (citing approvingly *State v Garrett*, 80 Wash App 651; 910 P2d 552 (1996)). Instead, the *Fosnaugh* Court presumed that the drafters' use of both "should" and "shall" in the operation manual demonstrated their "inten[t] to distinguish between the terms." *Id*. But see *Merriam-Webster's College Dictionary* (11th ed) (defining "should," in relevant part, as "used in auxiliary function to express obligation, propriety, or expediency").

As used in the House Rules, "should" is mandatory, not permissive, as Phillips argues. Similar to the operation manual in *Fosnaugh*, the "Keys/Lock" rule includes both "shall" and "should." The rules use "shall" in the context of altering a lock or doorknocker, stating in full: "No tenant *shall* alter any lock or install a new lock or doorknocker on *any* door without the written consent of management." It then uses "should" in the context of key-sharing, stating in full: "Keys are for resident use only and should not be given to guests or others to use to gain entry to any Housing Commission buildings, apartment, or dwelling units." Though *Fosnaugh* concluded that the use of "should" and "shall" by the drafters of the operation manual demonstrated their intent to distinguish between the terms, see *Fosnaugh*, 248 Mich App at 455, the overall context of the key-sharing rule connotes an obligatory effect, see *id*. See also *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015) ("[C]ontractual terms must be construed in context" and "read in light of the contract as a whole[.]") (citations omitted). Taken in the context of the sentence in which it appears, immediately following the phrase "[k]eys are for resident use only," the only sensible reading of "should" is as obligatory. Phillips reads an isolated portion of the key-sharing rule, i.e., that keys "should not be given to guests or others" to gain entry to buildings or apartments. She ignores, however, the language immediately preceding that statement, that "[k]eys are for resident use only . . . ." Thus, when read in context of the entire key-sharing rule—including that the keys are for resident-use only—the rule's use of "should" connotes an obligatory or mandatory effect, rather than a permissive one. *Fosnaugh*, 248 Mich App at 455. This

conclusion is not inconsistent with *Fosnaugh*. See *id*. ("[T]he word 'should' can, in certain contexts, connote an obligatory effect . . . .").

Phillips "agree[d] to obey the House Rules" incorporated into the lease. This included, consistent with the analysis above, not sharing her keys with anyone, including her grandson. Because she shared her key fob with her grandson, she violated the apartment building's rules and therefore breached her lease agreement. Phillips therefore could not maintain a breach-of-contract claim against GRHC. See *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 729-730; 957 NW2d 858 (2020) (noting that when the initial breach is substantial, "one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform") (quotation marks and citation omitted).

## III. DISMISSAL AS A DISCOVERY SANCTION

Phillips argues that the trial court abused its discretion when it dismissed her claims for her failure to comply with the July 2022 stipulated discovery order. We disagree.

"Whether to impose discovery sanctions is entrusted to the discretion of the trial court." *Local Area Watch v Grand Rapids*, 262 Mich App 136, 147; 683 NW2d 745 (2004). "We review a trial court's imposition of discovery sanctions for an abuse of discretion." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 659; 819 NW2d 28 (2011). The trial court abuses its discretion when its decision "is outside the range of principled outcomes." *Id*. at 659-660. This Court has held that a trial court's failure to evaluate other sanctions options on the record constitutes an abuse of discretion. See *Vicencio v Ramirez*, 211 Mich App 501, 506-507; 536 NW2d 280 (1995) (concluding that a trial court's failure to consider options other than dismissal constituted an abuse of discretion). We review de novo the interpretation and application of a court rule such as MCR 2.313. *Id*. at 660. We review any factual findings underlying the trial court's decision for clear error. *Id*., citing MCR 2.613(C). A finding is clearly erroneous when we are definitely and firmly convinced the trial court made a mistake. *Hardrick*, 294 Mich App at 660.

Under MCR 2.313(B)(2), if a party "fails to obey an order to provide or permit discovery," including an order entered related to a motion for an order compelling disclosure or discovery, "the court in which the action is pending may order such sanctions as are just . . . ." Such permissible sanctions include "an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party[.]" MCR 2.313(B)(2)(c). See also MCR 2.313(B)(2)(b) (allowing court to enter an order refusing to allow a disobedient party to support or oppose claims or defenses or prohibiting them from introducing matters into evidence).

Trial courts have the inherent authority to sanction litigants and their attorneys. *Maldonado v Ford Motor Co*, 476 Mich 372, 375; 719 NW2d 809 (2006) (citations omitted). "This power is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (citation omitted). Dismissal, however, is "a drastic step that should be taken cautiously." *Swain v Morse*, 332 Mich App 510, 518; 957 NW2d 396 (2020). "Our legal system favors disposition of litigation on the merits." *Vicencio*, 211 Mich App at 507. As a "severe sanction[]," courts should only

dismiss a case for "flagrant or wanton refusal to facilitate discovery," typically when there are "repeated violations of a court order." *Swain*, 332 Mich App at 518.

In *Dean v Tucker*, 182 Mich App at 32-33, this Court articulated a nonexhaustive list of factors courts should consider when determining an appropriate sanction:

> (1) whether the violation was wilful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the defendant, (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice, (5) whether there exists a history of plaintiff engaging in deliberate delay, (6) the degree of compliance by the plaintiff with other provisions of the court's order, (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. [Citations omitted.]

See *Vicencio*, 211 Mich App at 507 (articulating the *Dean* factors). Before dismissing a case, "the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Vicencio*, 211 Mich App at 506. But see *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009) ("[A] court speaks through its written orders and judgments, not through its oral pronouncements."). "[I]t is imperative that the trial court balance the factors and explain its reasons for imposing" a "grave sanction" such as dismissal "in order to allow for meaningful appellate review." *Kalamazoo Oil Co Boerman*, 242 Mich App 75, 88; 618 NW2d 66 (2000).

The trial court did not abuse its discretion when it found that the circumstances of this case warranted dismissal. The court found that Phillips willfully violated the July 18, 2022 discovery order, noting that she provided incomplete responses that were over a week past the August 1, 2022 deadline, and that she even refused to respond to some of the requests. See *Dean*, 182 Mich App at 32. The evidence supports these findings. Phillips responded to GRHC's discovery requests on August 10, 2022, nine days past the court-imposed deadline for responding and five months after GRHC sent the initial interrogatories and request for production. Those responses, when they did arrive, were incomplete, indicating she was "still gathering" information, and contained refusals to provide documents without a court order, even though the court's July 18, 2022 order compelled Phillips to provide those documents to GRHC.

The trial court also found that Phillips had a history of failing to abide by discovery and of engaging in deliberate delay. See *Dean*, 182 Mich App at 32-33. For these findings, the court relied not only on Phillips's late, incomplete responses from mid-August 2022, but also her failure to attend her deposition on August 30, 2022. The court noted that after missing the deposition, Phillips failed to contact GRHC regarding her alleged technological issues and did not reschedule the deposition. And although Phillips and her attorney may have had technological issues stemming from a power outage or issues with a cell phone, that does not excuse completely failing to at some point notify GRHC or its attorney of those issues or follow up with rescheduling the deposition. Between the delay in Phillips sending discovery responses before the court had to intervene, her failure to comply with the deadline imposed by the July 2022 discovery order, her late and incomplete responses (and some refusals), and her failure to attend her deposition, we

conclude that the trial court did not abuse its discretion in finding that Phillips had a history of failing to comply with discovery or of engaging in deliberate delay.

The trial court further found that Phillips's failure to timely respond to discovery prejudiced GRHC. See *Dean*, 182 Mich App at 133. The court found a five-month delay between GRHC serving its discovery requests and the court's decision on the summary-disposition and dismissal motions, noting that Phillips had "still only [provided] incomplete responses and no documentation . . . to support her claims." As the trial court found, this delay prevented GRHC from researching the extent of Phillips's injuries and finding suitable experts to counter her claims. And although case evaluation and a settlement had not yet been scheduled, GRHC could not amply prepare for either without disclosure of Phillips's claims and evidence. The trial court did not abuse its discretion in finding that Phillips's failure to comply with discovery prejudiced GRHC.

The trial court found that Phillips "made no attempt [to] supplement her response," despite GRHC's requests and the court's orders. *Dean*, 182 Mich App at 33. Although Phillips claims she supplemented her responses in early October 2022, we were unable to locate them in the lower court record. But even if she did supplement her responses in early October 2022, they would have been past the discovery deadline of September 12, 2022. Until that point, Phillips had only provided late, incomplete responses to discovery. Accordingly, because the record does not contain Phillips's alleged supplemental answers from October 2022, the trial court did not abuse its discretion by finding that she had failed to supplement her discovery responses.

Finally, the trial court found that a lesser sanction would not "better serve the interests of justice." The court expressly considered whether a lesser sanction—preventing Phillips from supporting her claims because of her discovery violations—was warranted. *Dean*, 182 Mich App at 33. It found, however, that this sanction would have the same effect as dismissal "because [her] inability to support her claims at trial would merely require GRHC to rest its proofs to prevail." The trial court therefore found that dismissal better served the interests of justice and was the "more judicially economic option." Without any evidence to support her claims, they would ultimately fail, so preventing her from supporting her claims would, as the trial court found, lead to the same outcome as dismissal. These findings were not outside the range of reasonable and principled outcomes. The trial court therefore did not abuse its discretion in finding that a lesser sanction would not better serve the interests of justice.

Because the trial court analyzed the relevant *Dean* factors in its opinion, and none of its findings constituted an abuse of discretion, the trial court did not abuse its discretion by dismissing Phillips's claims as a discovery sanction.[4]

---

[4] Though "[s]tare decisis does not arise from a point addressed in obiter dictum," "an issue that is intentionally addressed and decided is not dictum if the issue is germane to the controversy in the case, even if the issue was not necessarily decisive of the controversy in the case." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007) (citations omitted). See *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014) (defining "dictum" as "a judicial comment that is not necessary to the decision in the case.") (citation

We affirm.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood

---

omitted). Dismissal was not decisive of the controversy, summary disposition was. But it was germane to the controversy since GRHC moved for dismissal as a discovery sanction as an alternative to its summary-disposition motion. Our analysis of the dismissal issue is thus not dictum.